UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AMIR HAKIM MCCAIN,             : CIVIL NO: 1:12-CV-00789
                               :
            Plaintiff          :
                               : (Judge Rambo)
      v.                       :
                               : (Magistrate Judge Carlson)
JOHN E. WETZEL, *et al.,*      :
                               :
            Defendants         :


**REPORT AND RECOMMENDATION**


**I. Introduction.**


        The plaintiff, Amir Hakim McCain, a state inmate, has

brought this civil action against 11 different prison

officials, in which he claims that the defendants retaliated

against him because he sought to bring criminal charges against

prison officials. McCain also claims that the retaliation

included sexual assaults in connection with strip searches and

destruction of his legal property.  Finally, McCain also claims

that the destruction of his legal property violated his right

of access to the courts.


        The defendants filed a motion to dismiss McCain's

complaint.  Mindful of the fact that the scope of our review is

confined to an assessment of the adequacy of the pleadings, and

does not entail an analysis of whether McCain can prove what he alleges, we recommend that the motion to dismiss be granted in part and denied in part, as set forth below.

For his part, McCain filed a motion to deny the defendants' motion to dismiss, and he filed a brief in support of that motion to deny. Because the proper way to oppose a motion to dismiss is to file a brief in opposition to the motion, not a separate motion to deny the motion, we will recommend that McCain's motion to deny be dismissed as a separate motion but that it be considered as McCain's brief in opposition to the defendants' motion to dismiss the complaint.

## II. Background and Procedural History.

### A.   McCain's Factual Averments

In his *pro se* complaint, McCain names the following eleven individuals as defendants: (1) John E. Wetzel, the Secretary of the Pennsylvania Department of Corrections; (2) Keri Moore, the Chief of the Secretary's Office of Inmate Grievances and Appeals; (3) James C. Barnacle, the Director of the Office of Special Investigations and Intelligence; (4) Joseph P. Nish, the former Superintendent of the State

Correctional Institution at Waymart (SCI-Waymart); (5) Joseph

J. Vinansky, the Superintendent's Assistant and Grievance

Officer at SCI-Waymart; (6) Corrections Officer Thomas Roegner;

(7) Corrections Officer David Nevins, (8) Lieutenant Smith;

(9) Brian Coleman, the Superintendent at the State Correctional

Institution at Fayette (SCI-Fayette); (10) Rhonda House, the

Superintendent's Assistant and Grievance Officer at SCI-

Fayette; and (11) Lieutenant Adam Crumb.

McCain's complaint then catalogues a series of acts

which McCain perceives as having been committed against him by

various correctional officials in retaliation for his legal

activities.  These allegations follow a pattern, a pattern

repeated throughout McCain's pleadings marked by allegations of

grave staff misconduct coupled with assertions that others

failed to adequately inquire into McCain's earlier allegations.

Thus, liberally construed, McCain alleges the following facts

in his complaint.

At the outset, McCain levels claims relating to the

loss or destruction of property. First, McCain alleges that he

filed a private criminal complaint in Wayne County against

defendant Nevins, Sergeant Cole, and Unit Manager Banta.  He provides a docket number for that case, and according to the docket sheet of that case, on June 15, 2010, McCain filed a petition for an independent review of a private criminal complaint.  Apparently in relation to the actions underlying the private criminal complaint, McCain alleges that SCI-Waymart paid him for a typewriter which defendants Nevins and Sergeant Cole had damaged.

McCain then alleges that this complaint led to escalating staff violence against him.  According to McCain, his filing of the private criminal complaint sparked a series of retaliatory actions against him.  He alleges that from October 14, 2010 through November 18, 2010, defendant Roegner sexually assaulted him in retaliation for his filing of the criminal complaint.  In connection with strip searches, McCain alleges that defendant Roegner forcibly touched his genitals, inner thighs, and buttocks and that Roegner inserted his fingers into McCain's rectum each time he exited his cell.  McCain alleges that he requested a separation from defendant Roegner on October 14, 2010.  He alleges that that request was made as part of a statement that he wrote under duress while

defendant Roegner and four other correctional officers stood over him with "black sticks." According to McCain, defendant Roegner does not deny strip searching him numerous time after he had requested a separation.

This physical violence is then in McCain's factual narrative combined with renewed destruction of property by prison staff. McCain alleges that, on November 19, 2010, defendant Nevins damaged his footlocker and destroyed documents relating to his criminal conviction including 15 volumes of notes of testimony, motions, medical records of various people, a police report, a transcript of a 911 call, and DNA and paternity test records. This destruction of property allegedly occurred when defendant Nevins was packing McCain's property for transfer from SCI-Waymart to SCI-Fayette. McCain alleges that defendant Nevins asserts that he mailed the legal materials to SCI-Fayette and that someone at SCI-Fayette destroyed those materials. McCain contends, however, that defendant Nevins destroyed his legal materials as retribution for the private criminal complaint that McCain had filed against Nevins and others. According to McCain, he had to pay to have his property shipped to SCI-Fayette in violation of the

DOC policy, and he suffered an actual injury with regard to litigating his claim of actual innocence.

Cast against the backdrop McCain then alleges that prison supervisors responded inadequately to his complaints about the acts of staff. Thus, McCain alleges that he filed a grievance with defendant House complaining about his property from SCI-Waymart being opened. Responding to the grievance, defendant Crumb stated that all property that is shipped in is inspected by the search team before it enters the facility, resealed, and then sent to R&D for distribution, and in this case the property was sent to the L-unit property officers who in turn gave it to McCain. According to McCain, the search team gave the property officers his property unsealed, which is a violation of DOC policy. On appeal, defendants Coleman and Moore upheld the denial of McCain's grievance.

McCain also filed a grievance about his missing legal materials and about defendant Nevins damaging his footlocker. Defendant Vinansky denied that grievance and stated that there is no evidence that staff damaged or destroyed any of McCain's property. McCain appealed the denial of that grievance to

defendant Nish, who upheld Vinansky's initial response. According to McCain, defendant Nish did not rule in his favor because McCain had refused to "setup" Corrections Officer Hernandez, who defendants Nish and Smith had alleged received money from McCain in exchange for sex and a cellular phone.

On February 1, 2011, McCain asserts that he reached outside the prison system to protest staff conduct, filing a private criminal complaint with the Wayne County District Attorney's Office charging defendant Roegner with sexual assault.

On February 21, 2011, McCain then wrote to defendant Wetzel about his missing legal materials and about his footlocker being damaged. He explained that he would suffer an actual injury to his claim of actual innocence in relation to a DNA hearing that is pending. Defendant Wetzel did not respond.

At the end of March, McCain was transferred on writ from SCI-Fayette to SCI-Graterford to appear in court for DNA testing relating to the murder investigation of his finance and his newborn child.

In May of 2011, McCain received a misconduct report written by defendant Smith charging him with misconduct for filing the private criminal complaint charging defendant Roegner with sexual assault. According to the misconduct report, the private criminal complaint was denied by the District Attorney and referred to the Office of Special Investigations and Intelligence, and McCain's allegations were proven false as the strip searches occurred while McCain was in his cell and defendant Roegner was outside the cell with the cell door separating them. At the hearing on the misconduct, McCain informed the hearing examiner that the assaults occurred after he left his cell and that video footage would support his assertions. According to McCain, the hearing examiner dismissed all charges and advised him to contact his attorney to pursue prosecution.

Defendants Wetzel, Nish, Smith, and Barnacle refused to review video footage of defendant Roegner's sexual misconduct as well as video footage of McCain writing his statement on October 14, 2010 as defendant Roegner and four other officers stood over him with "black sticks."

On July 25, 2001, McCain sent defendant Wetzel a copy of the misconduct report, the private criminal complaint he had filed against defendant Roegner, his statement, and the "fraudulent" investigation done by defendant Barnacle. Defendants Wetzel and Barnacle requested that the District Attorney disapprove the private criminal complaint in deference to internal DOC procedures. The District Attorney complied with that request and dismissed the private criminal complaint.

### B. McCain's Legal Claims

Cast against this factual recital, McCain advances the following legal claims: First, McCain claims that defendant Roegner retaliated against him and violated the Eighth Amendment by sexually assaulting him. He also claims that defendant Barnacle failed to protect him from defendant Roegner's conduct. McCain further claims that defendants Wetzel, Barnacle, and Smith violated the Eighth Amendment by failing to properly investigate and review video footage of defendant Roegner's conduct.

McCain claims that defendant Nevins retaliated against him and violated his right of access to the courts by destroying his legal materials and damaging his footlocker. He also claims that defendant Crumb retaliated against him and violated his right of access to the court by destroying his legal materials. He claims that defendants Vinansky and Nish retaliated against him and denied him access to the courts by supporting defendant Nevins's destruction of his legal materials. He claims that defendant Coleman retaliated against him and denied him access to the courts by supporting defendant Crumb's deviation from DOC policy by not allowing McCain to be present to inventory his legal materials. He claims that defendants Moore and Wetzel retaliated against him and denied him access to the courts by failing to investigate defendants Nevins and Crumb's conduct.

As relief, McCain is seeking injunctive relief as well as monetary damages.

In this Report and Recommendation we address the defendants' motion to dismiss the complaint and McCain's motion to deny that motion to dismiss.

**III. Discussion.**

Before we address the merits of the defendants' motion to dismiss the complaint, we briefly address McCain's motion to deny the defendants' motion to dismiss.  Instead of simply filing a brief in opposition to the defendants' motion to dismiss, which is the proper procedure under the Local Rules of Court to oppose a motion, McCain filed a motion to deny the motion to dismiss and a brief in support of that motion. Because the proper way to oppose a motion to dismiss is to file a brief in opposition to the motion, not a separate motion to deny the motion, we will recommend that McCain's motion to deny be dismissed as a separate motion but that it be considered as McCain's brief in opposition to the defendants' motion to dismiss the complaint.

**A. Motion to Dismiss—Standard of Review.**

A motion to dismiss a complaint for failure to state a claim upon which relief can be granted brought pursuant to

Fed.R.Civ.P. 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint. In deciding a motion to dismiss the complaint, we must accept all well-pleaded factual allegations as true, "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *McTernan v. City of York,* 564 F.3d 636, 646 (3d Cir. 2009)(quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Id.* "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v.*

*UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft, supra,* 556 U.S. at 679. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft, supra,* 556 U.S. at 678 (quoting *Twombly*, *supra,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[A] complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer,* 131 S.Ct. 1289, 1296 (2011). Rule 8(a)(2) "requires only a plausible 'short and

plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Id.* The factual detail necessary to satisfy the standard will vary depending on the case. *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 320 n.18 (3d Cir. 2010).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

### B. The Defendants Are Not Entitled to Dismissal of the Claims Based on Roegner's Alleged Sexual Assaults on the Basis that McCain Failed to Exhaust Administrative Remedies under DC-ADM 804.

We turn first to the defendants' contention that McCain failed to exhaust administrative remedies as to his claims relating to defendant Roegner's alleged sexual assaults.

42 U.S.C. § 1997e(a), provides:

> No action shall be brought with respect
> to prison conditions under section 1983 of
> this title, or any other Federal law, by a
> prisoner confined in any jail, prison, or
> other correctional facility until such
> administrative remedies as are available are
> exhausted.

In accordance with § 1997e(a), the exhaustion of available administrative remedies is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77. Failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216 (2007). As an affirmative defense, the failure to exhaust available administrative remedies must be pleaded and proven by

the defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

42 U.S.C. § 1997e(a) requires proper exhaustion. *Woodford v. Ngo,* 548 U.S. 81 (2006). In other words, § 1997e(a) requires more than simple exhaustion, i.e., more than that there is no further process available to the inmate within the grievance system. *Spruill v. Gillis*, 372 F.3d 218, 227-31 (3d Cir. 2004). Section 1997e(a) requires that an inmate follow the procedural requirements set forth in the administrative remedy process that is available to him. *Id.* at 231. The prison grievance procedures supply the yardstick for measuring whether exhaustion was proper. *Id. See also Jones, supra,* 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

The defendants have filed a declaration in which defendant Vinansky outlines the grievance procedure set forth in DC-ADM 804 and states that McCain never submitted a

grievance complaining that he had been the victim of sexual harassment or sexual misconduct while incarcerated at SCI-Waymart.  McCain does not dispute that he did not submit a grievance under DC-ADM 804 about the alleged sexual assaults.  Instead, he contends that he exhausted administrative remedies under DC-ADM 001 relating to inmate abuse.

"The Pennsylvania DOC has established several methods by which Pennsylvania inmates can grieve their claims of abuse before seeking redress in federal court." *Knauss v. Shannon,* Civil No. 1:CV-08-1698, 2010 WL 569829 at *7 (M.D.Pa. Feb. 12, 2010).  Under the "Inmate Abuse Allegation Monitoring" policy of DC-ADM 001, an inmate can report abuse in three different ways: by reporting it verbally or in writing to any staff member; by filing a grievance in accordance with DC-ADM 804; or by reporting it in writing to the Department's Office of Professional Responsibility (OPR). *Id.*[1]

---

1.  Shortly after the alleged abuse in this case took place, DC-ADM 001 was amended.  The section regarding methods for reporting abuse, however, was not amended except that the Office of Special Investigations and Intelligence was substituted for the OPR. *See* DC-ADM 001, Part VI(D)(as amended on December 16, 2010).

Although the defendants contend that McCain failed to exhaust administrative remedies under DC-ADM 804, DC-ADM 804 is not the only way to exhaust administrative remedies regarding inmate abuse. Rather, as noted, DC-ADM 001 permits an inmate to report abuse in ways other than under DC-ADM 804. *Victor v. SCI Smithfield,* Civil No. 3:08-CV-1374 at *9-11 (M.D.Pa. Aug. 12, 2011)(Nealon, J.)(denying summary judgment on exhaustion grounds because the plaintiff had filed a letter with the OPR regarding abuse and the record contained contradictory reports as to when the investigation on the complaint was completed); *McKinney v. Zihmer,* Civil No. 1:CV-01-2088, 2010 WL 1135722 at *7 (M.D.Pa. Mar. 23, 2010)(Rambo, J.)(denying summary judgment where prisoner claimed that he had complied with the exhaustion requirement by way of DC-ADM 001); *Carter v. Klaus,* Civil No. 1:CV-05-1995, 2006 WL 3791342 at *3 (M.D.Pa. Dec. 22, 2006)(Caldwell, J.)(denying defendants' motion for summary judgment on exhaustion grounds because the plaintiff pursued a complaint to the OPR under DC-ADM 001, "the only step he had to take under that policy"). And McCain contends that he exhausted administrative remedies under DC-ADM 001 by reporting the abuse to the OPR. At this stage of the proceedings, the defendants have not carried their burden of proving that McCain

failed to properly exhaust administrative remedies.

Accordingly, we will not recommend that the sexual assault

claims be dismissed at this time on exhaustion grounds.

      **C.  The Complaint Fails to State a Claim of Denial of Access to the Courts Upon Which Relief Can Be Granted.**

Next, we turn to the defendants' contention that the

complaint fails to state a claim of denial of access to the

courts upon which relief can be granted.

"Under the First and Fourteenth Amendments, prisoners

retain a right of access to the courts." *Monroe, supra,* 536

F.3d at 205. "Whether an access claim turns on a litigating

opportunity yet to be gained or an opportunity already lost,

the very point of recognizing any access claim is to provide

some effective vindication for a separate and distinct right to

seek judicial relief for some wrong." *Christopher v. Harbury*,

536 U.S. 403, 414-415 (2002). The right of access to the

courts "is ancillary to the underlying claim, without which a

plaintiff cannot have suffered injury by being shut out of

court." *Id.* at 415. Therefore, a plaintiff must allege an

actual injury by identifying a nonfrivolous, arguable
underlying claim blocked or lost by the alleged denial of
access to the courts. *Id.* The underlying cause of action,
whether anticipated or lost, is an element of the access claim.
*Id.* Like any other element, the underlying cause of action
"must be addressed by allegations in the complaint sufficient
to give fair notice to a defendant." *Id.* at 416. In the prison
setting, actual injury is the loss of a nonfrivolous claim that
relates to a challenge, direct or collateral, to an inmate's
conviction or relates to a challenge to the conditions of
confinement. *Lewis v. Casey*, 518 U.S. 343, 351-54 (1996).

As pleaded by the plaintiff, the complaint fails to
state an access-to-the-courts claim upon which relief can be
granted. In its present form, the complaint simply does not
set forth well pleaded facts which meet the legal requisites
for an access-to-courts claim. Although McCain alleges in a
conclusory fashion that the destructions of his legal materials
have caused him an actual injury and he references in passing a
claim of actual innocence and DNA testing, he has not clearly
alleged in what context he is presenting an actual innocence
claim. In particular, he has not alleged facts from which it

can reasonably be inferred that he has a nonfrivolous challenge to his conviction or sentence. Moreover, McCain has not alleged how the documents that were allegedly destroyed would have proved his innocence. He has not alleged any facts from which it can reasonably be inferred that the destruction of his property resulted in the loss of a nonfrivolous challenge to his conviction or sentence or prejudiced him in the litigation of a challenge to his conviction or sentence. Because McCain has alleged nothing more than vague legal conclusions about the impact that the destruction of his property had on his right of access to the courts, he has not alleged an actual injury to his right of access to the courts in some other litigation. Therefore, the complaint fails to state a claim of a denial of access to the courts upon which relief can be granted.

> **D. The Complaint Fails to State a Due Process Claim Upon Which Relief Can Be Granted as to the Damage to McCain's Footlocker and the Destruction of his Legal Materials.**

The defendants contend that the complaint fails to state a claim for damage to McCain's footlocker because the

Pennsylvania Department of Corrections provides an adequate post deprivation remedy.

At the outset, to the extent that the complaint alleges a due process violation relating to the damage to the footlocker, the complaint fails to state a due process claim upon which relief can be granted.  Inmate due process claims arising out of damage or destruction of property are judged against settled legal standards.  "'[A]n unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause 'if a meaningful postdeprivation remedy for the loss is available.'" *Monroe v. Beard,* 536 F.3d 198, 210 (3d Cir. 2008)(quoting *Hudson v. Palmer,* 468 U.S. 517, 533 (1984)). "Pre-deprivation notice is not constitutionally required." *Id.*

Here, McCain alleges that he filed a grievance about his damaged footlocker.  While it is evident that McCain has brought this action because he is not satisfied with the outcome of that process, the fact remains that the Pennsylvania Department of Corrections grievance procedure provided McCain an adequate postdeprivation remedy. *See Lyons v. Sec'y of Dep't*

*of Corr.*, 445 F. App'x 461, 463 (3d Cir. 2011). Furthermore, it is clear that mere dissatisfaction with the outcome received through due process does not equate to a denial of due process. Because the facts alleged by McCain in the complaint affirmatively reveal that he had an adequate postdeprivation remedy available to him through the grievance system, the complaint fails to state a due process claim upon which relief can be granted as to the damaged footlocker.

Although the defendants only specifically move to dismiss the claim as to the footlocker, the same due process standards apply to the destruction of McCain's legal materials. And because the grievance process provided an adequate post deprivation remedy, any due process claim based on the destruction of McCain's legal materials also fails.

We note that the defendants do not move to dismiss McCain's retaliation claims based on the damage or destruction of property or any of McCain's other retaliation claims. Because the defendants do not address such claims, neither do we except to the extent that we address below the contention of the supervisory defendants that the complaint fails to state a

claim upon which relief can be granted against them because it fails to allege personal involvement on their part.

> ### E. The Complaint Fails to State a Claim Upon Which Relief Can Be Granted Against Defendants Wetzel, Moore, Barnacle, Nish, Vinansky, Smith, Coleman, and House.

McCain claims that defendants Wetzel, Moore, Barnacle, Nish, Vinansky, Smith, Coleman, and House failed to properly address his grievances and complaints about the actions of the other defendants.  These defendants contend that the claims against them should be dismissed because they cannot be liable under the theory of *respondeat superior* and the complaint does not allege personal involvement on their part in the alleged deprivation of McCain's rights.

Liability in a *Bivens* action may not be based on *respondeat superior*. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).  "Liability based on *respondeat superior* arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm." *Santiago v. Warminster Twp.,* 629 F.3d 121,

128 (3d Cir. 2010)(quoting *Monell v. Dep't of Soc. Services of New York,* 436 U.S. 658, 692 (1978)).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, *supra,* 556 U.S. at 676.  "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677.

There are two viable theories of supervisory liability. *Santiago*, *supra,* 629 F.3d at 129 n.5.  Under the first theory, a supervisor can be liable if he or she established and maintained a policy, practice or custom which directly caused the constitutional harm. *Id.*  Under the second theory, a supervisor can be liable if he or she participated in violating the plaintiff's rights, directed others to violate the plaintiff's rights or as the person in charge had knowledge of and acquiesced in his or her subordinates' violations of the plaintiff's rights. *Id.*

The filing of a grievance about a past event is not sufficient to show that the person to whom the grievance was

addressed had actual knowledge of the events at the time they happened. *See Brooks v. Beard,* 167 F. App'x 923, 925 (3d Cir. 2006)(holding that an inmate's allegation that prison officials responded inappropriately to a grievance did not establish that they were involved in the underlying unconstitutional conduct).

Nor can liability rest here based on the fact that the defendants failed to act favorably upon a grievance or an administrative appeal lodged by McCain. Indeed, "[i]t is well-established that inmates do not have a constitutionally protected right to a prison grievance system." *Mitchell v. Dodrill,* 696 F.Supp.2d 454, 469 (M.D. Pa. 2010)(Rambo, J.). Thus, a denial of a grievance or appeal or a failure to adequately investigate a grievance or appeal does not amount to a violation of a prisoner's constitutional rights. In fact, in the context of appeals of prisoner grievances it is well settled that a supervisor may not be held liable for civil rights violations based solely upon a failure to grant an inmate's appeal of an adverse decision. As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the
> Secretaries of the Department of Corrections

> or Superintendents, were named only for their
> supervisory roles in the prison system. The
> District Court properly dismissed these
> defendants and any additional defendants who
> were sued based on their failure to take
> corrective action when grievances or
> investigations were referred to them. *See Rode
> v. Dellarciprete,* 845 F.2d 1195, 1207 (3d
> Cir.1988) (defendant in a civil rights action
> must have personal involvement in the alleged
> wrongs; liability cannot be predicated solely
> on the operation of *respondeat superior* ); *see
> also Antonelli v. Sheahan,* 81 F.3d 1422, 1430
> (7th Cir.1996) (state's inmate grievance
> procedures do not give rise to a liberty
> interest protected by the Due Process Clause)

*Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of
Appeals for the Third Circuit has recently held that summary
dismissal is appropriate "because there is no apparent
obligation for prison officials to investigate prison
grievances." *Paluch v. Sec'y Pennsylvania Dept. Corr.*, 442 F.
App'x 690, 695 (3d Cir. 2011).

These principles apply here and compel the dismissal of
McCain's claims against defendants Wetzel, Moore, Barnacle,
Nish, Vinansky, Smith, Coleman, and House because these
defendants cannot be liable for their actions with respect to
the grievances and complaints filed by McCain after the alleged

27

sexual assaults and the alleged destruction of property had taken place.

### F. The Plaintiff Should be Granted Leave to File an Amended Complaint.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008). The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.*

Out an abundance of caution and considering the leeway given *pro se* litigants, we will recommend that the plaintiff be granted leave to file an amended complaint. Any amended complaint shall be complete in all respects. It shall contain all of the plaintiff's claims against all of the defendants. It shall be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed. It shall not incorporate by reference any of the

previous complaint.  Any second amended complaint shall be titled as an amended complaint and shall contain the docket number of this case.

**IV. Recommendations.**

Accordingly, for the foregoing reasons, it is recommended that the defendants' motion (doc. 20) to dismiss the complaint be granted in part and denied in part.  It is recommended that the access-to-the-courts claims, the due process property claims, and the claims against defendants Wetzel, Moore, Barnacle, Nish, Vinansky, Smith, Coleman, and House be dismissed.  It is recommended that the motion to dismiss otherwise be denied.  It is also recommended that the plaintiff's motion (doc. 28) to deny the motion to dismiss be dismissed.  Finally, it is recommended that McCain be granted leave to file an amended complaint and that the case be remanded to the magistrate judge.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 26th day of October, 2012.


                                    S/*Martin C. Carlson*
                                    Martin C. Carlson
                                    Magistrate Judge