# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMIR HAKIM MCCAIN a/k/a, | : | CIVIL NO.: 1:12-CV-00789 |
| JOHN MCCAIN | : | |
| Plaintiff, | : | (Judge Rambo) |
| | : | |
| v. | : | |
| | : | |
| JOHN E. WETZEL, *et al.*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

On April 27, 2012, the plaintiff, Amir Hakim McCain, a/k/a John McCain ("McCain"), who is presently housed at the State Correctional Institution in Marienville, Pennsylvania, commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.[1]  *Doc. 1.*  After years of litigation, only two of McCain's claims, a First Amendment retaliation claim and an Eighth Amendment sexual assault claim, have survived, and only one defendant, Thomas Roegner ("Roegner"), a corrections officer at the State Correctional Institution in Waymart, Pennsylvania ("SCI-Waymart"), remains.  Before the Court is Roegner's motion (*doc. 259*) for

---

[1] At the time McCain filed his complaint, he was housed at the State Correctional Institution in LaBelle, Pennsylvania, which is located in the Middle District of Pennsylvania.

partial summary judgment as to McCain's First Amendment retaliation claim.  For the reasons set forth below, it is recommended that Roegner's motion be granted.

## II. Background.[2]

On August 6, 2014, it was recommended that the defendants' motion (*doc. 134*) to dismiss be granted, except to the limited extent that Roegner did not move to dismiss the First and Eighth Amendment claims asserted against him.  *Doc. 182* at 19.   Judge Rambo adopted this recommendation and remanded the matter back to the undersigned for further pretrial management of McCain's surviving claims.  *Doc. 195*.  Since then, Roegner has filed a motion (*doc. 259*) for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that he is entitled to judgment as a matter of law because there is no genuine issue of material fact with respect to McCain's First Amendment retaliation claim.  The motion, having been fully briefed, is ripe for disposition.  Although McCain has also filed his own motion (*doc. 289*) for summary judgment, the matter has not been fully briefed, and the period for doing so has not yet passed.  *See doc. 316*

---

[2] The Court writes primarily for the parties; therefore, the factual background or procedural history of this case, which is completely and thoroughly set forth in the August 6, 2014 Report and Recommendation (*see doc. 182*), will not be repeated.

(granting McCain's extension of time to file a reply-brief).   Thus, it is only

Roegner's motion that is the subject of this Report and Recommendation.[3]

## II. Statement of Facts.[4]

In October of 2010, McCain was incarcerated at the Restricted Housing Unit

("RHU") at SCI-Waymart by the Pennsylvania Department of Corrections (the

---

[3] To the extent that the following disquisition references McCain's motion for summary judgment, however, such references are only to provide a thorough and independent review of the record, not to address the merits of said motion.

[4] Pursuant to the Local Rules for the U.S. District Court for the Middle District of Pennsylvania, a party moving for summary judgment must attach to the motion "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."   M.D. Pa. L.R. 56.1.   The non-moving party is required to submit "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in [the moving party's statement of the material facts], as to which it is contended that there exists a genuine issue to be tried."   *Id.* Both statements must reference the record for support, and the moving party's statement will be deemed admitted unless controverted by the non-moving party. *See id.*   Here, Roegner, as the moving party, filed a statement of material facts (*doc. 260*), supported by adequate references to the record.   Although McCain, as the non-moving party, filed "an opposition to the motion for summary judgment" (*doc. 285*), a supplemental brief in opposition (*doc. 292*), and "a proposed statement of uncontested facts" (*doc. 286*), none of these documents include a statement of material facts, responding to the numbered paragraphs set forth in Roegner's statement of material facts.   Therefore, Roegner's statement of material facts is adopted as undisputed. *See United States ex rel. Paranich v. Sorgnard*, 286 F. Supp. 2d 445, 447 n.3 (M.D. Pa. 2003) (adopting moving party's statement of facts where non-movant failed to comply with Local Rule 56.1), *aff'd*, 396 F.3d 326, 330 n.5 (3d Cir. 2005); *see also Larnerd v. Mong*, No. 1:14-CV-1204, 2015 WL 5601949, at *2 (M.D. Pa. 2015) ("A party's failure to comply with Local Rule 56.1 permits the court to deem the proponent's statement of material facts undisputed, even when the opposing litigant is *pro se*.").

"Department"). *Doc. 260* at ¶ 1.  Pursuant to policy, whenever inmates at the RHU enter or exit their cells, including before using the showers, the law library, or exercising in the yard, they must first be strip searched, and they must then be escorted by the corrections officers from their cells.  *Id.* at ¶ 2.  McCain asserts that over the span of approximately one month, Roegner, when he was the corrections officer escorting McCain to or from cell 2015, would enter the cell during McCain's strip search and sexually assault him.  *Id.* at ¶ 3.   McCain believes that Roegner did this in retaliation for his filing of criminal charges, as well as a prison grievance, against Roegner's coworkers.  *Id.* at ¶ 4.

The Department has an established policy, designated as the Department of Corrections Administrative Directive 804 ("DC-ADM 804"), the Inmate Grievance System, which outlines the procedures that must be followed by inmates who file grievances while incarcerated at state prisons operated by the Department.  *Id.* at ¶ 5.   An inmate must submit a grievance in writing to the Facility Grievance Coordinator, using the grievance form which is available at all housing units, and, among other things, the inmate must "include a statement of the facts relevant to the claim" and "identify any person(s) who may have information that could be helpful in resolving the grievance."  *Id.* at ¶ 6.  Pursuant to DC-ADM 804, the inmate must submit a grievance for initial review to the Facility Grievance

Coordinator within 15 working days after the event upon which the claim is based. *Id.* at ¶ 7.

McCain never filed a prison grievance with the Facility Grievance Coordinator that either named Roegner or that alleged he suffered retaliation or sexual misconduct by staff. *Id.* at ¶ 8. Instead, in February of 2011, McCain filed a private criminal complaint against Roegner in Wayne County, asserting that he was sexually assaulted by Roegner. *Id.* at ¶ 9.

## III. Summary Judgment Standard.

Roegner moves for judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).   With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).   If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.   Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252.   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

6

'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex*, 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## IV. Discussion.

Roegner seeks summary judgment with respect to McCain's First Amendment retaliation claim based on McCain's purported failure to exhaust his available administrative remedies as required by the Prison Litigation Reform Act (the "PLRA"). Under the PLRA, a prisoner is required to exhaust available administrative remedies prior to filing an action challenging prison conditions. In particular, the Act provides:

> No action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). "This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Id.* Thus, the benefits of the exhaustion requirement "include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id.* at 219. While the exhaustion requirement serves to alert prison officials to a problem, "notice to those who might later be sued . . . has not been thought to be one of the leading purposes of the exhaustion requirement." *Id.*

In accordance with § 1997e(a), the exhaustion of available administrative remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 739 (2001), and the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). "[C]ompliance with

the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77. Failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). As such, the defendant has the burden of pleading and proving that the prisoner failed to exhaust administrative remedies. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

42 U.S.C. § 1997e(a) requires proper exhaustion. *Woodford v. Ngo*, 548 U.S. 81 (2006). In other words, it requires more than simple exhaustion, i.e., more than that there is no further process available to the prisoner within the grievance system. *Spruill v. Gillis*, 372 F.3d 218, 227-31 (3d Cir. 2004). Section 1997e(a) requires that a prisoner follow the procedural requirements set forth in the administrative remedy process that is available to him. *Id.* at 231. The prison grievance procedures supply the yardstick for measuring whether exhaustion was proper. *Id.*; *see also Jones*, 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.")

"Under the PLRA, exhaustion is a precondition for bringing suit under § 1983." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013). It is a "'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'" *Id.* at 270 (emphasis in original)

(quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010)).  There is no right to have a jury decide the issue of exhaustion. *Id.* at 271.  Rather, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Id.* at 269.

Here, it is undisputed that an inmate, pursuant to DC-ADM 804, must submit a grievance for Initial Review to the Facility Grievance Coordinator within 15 working days after the event upon which the claim is based.  It is further undisputed that McCain never submitted a grievance to the Facility Grievance Coordinator, which either named Roegner or alleged that he suffered retaliation or sexual misconduct.  In addition to these undisputed facts, Roegner has also presented the declaration of Joseph Vinanksy, the Facility Grievance Coordinator at SCI-Waymart, who confirmed that McCain never filed such a grievance. *Doc. 260-1* at 7, ¶ 12.[5]  And, while McCain was given the opportunity to come forward with evidence that his First Amendment retaliation claim has, in fact, been administratively exhausted, he has not done so.

---

[5] Vinansky, "[a]s the Facility Grievance coordinator, [is] charged with the responsibility for the overall administration of the Inmate Grievance System at SCI-Waymart, which includes determining whether a grievance was filed in compliance with [DC-ADM 804.]" *Doc. 260-1* at 5, ¶ 4.  Moreover, he "[has] access to the Department's Automated Inmate Grievance Tracking System, which allows [him] access to a computerized screen that displays all grievances filed a particular inmate." *Id.* at ¶ 5.

Instead, McCain points to his deposition (*see doc. 285* at 3), where he testified that he sent a letter to James C. Barnacle ("Barnacle") at "the Office of Professional Responsibility" (McCain Dep. Feb. 20, 2015, 27:18-28:-1; 29:10-14; 33:9-34:9; 35:8-14 (*doc. 260-1* at 54, 55, 56, 60, 62)), and he attaches this letter, albeit to his own motion for summary judgment, as an exhibit. *See doc. 290-1* at 1-2.  McCain also points to his deposition (*see doc. 285* at 3), where he testified that he filed a private criminal complaint against Roegner, asserting that he was sexually assaulted by him.  McCain Dep. 77:13-16 (*doc. 260-1* at 104).  To the extent that McCain asserts that his letter to Barnacle or his private criminal complaint against Roegner constitute administrative exhaustion, he has not presented any evidence to demonstrate that either channel complies with the well-established procedures set forth in DC-ADM 804.  *See Oliver v. Beard*, No. 4:10-CV-1387, 2011 WL 4565787, at *9 (M.D. 2011) (granting summary judgment in favor of defendants, where plaintiff "provided no evidence to support his contention that sending letters to staff members and outside law enforcement officials is part of the established procedure set forth in [DC-ADM 804]," which, as articulated by the Court, plaintiff was "required to follow in order to exhaust his administrative remedies before filing a federal lawsuit").  Thus, the undisputed evidence demonstrates that McCain has not exhausted his available administrative remedies.

As previously stated, however, McCain, in addition to filing a brief in opposition to Roegner's motion for summary judgment (titled, "opposition to the motion for summary judgment" (*doc. 285*)), has also filed his own motion for summary judgment (*doc. 289*), along with a brief in support (*doc. 287*), a proposed statement of uncontested facts (*doc. 286*), a declaration (*doc. 290*), and a number of exhibits (*docs. 289-1*; *290-1*). It "is quite clear," however, that based upon "the plain language of Local Rule 56.1," McCain's filing of his own motion for summary judgment and statement of material facts "is not technically sufficient" to either oppose Roegner's motion or deny Roegner's statement of material facts. *Dreibelbis v. Young*, No. 06-CV-2055, 2007 WL 4344120, at *2 (M.D. Pa. 2007). Nevertheless, a thorough and independent review of the record, has led to the unearthing of McCain's assertion, in both his supplemental brief in opposition to Roegner's motion and his own motion for summary judgment, that he was "under 'imminent danger' to file a grievance for retaliation at SCI-Waymart[.]"[6] *Doc. 287* at 2; *doc. 292* at 1. A vague assertion of being "under 'imminent danger,'" however, is an insufficient basis for excusing a prisoner's failure to exhaust. *See Phillips v. Potter*, No. 3:14-CV-1178, 2015 WL 4163074, at *5 (M.D. Pa. 2015)

---

[6] Although McCain does not expound on this, he vaguely states that he was "under imminent danger" to file a grievance "once defendant Roegner was the investigator of himself for the sexual assault, sexual abuse, sexual harassment, threats, [and] retaliation against his co-workers." *Doc. 292* at 1; *see doc. 287* at 2 (internal quotation marks omitted).

(explaining that the PLRA's exhaustion requirement, and the aims thereof, "would be eviscerated if prisoners need only plead 'imminent danger' to avoid the administrative exhaustion requirement"); *cf. Pena-Ruiz v. Solorzano*, 281 F. App'x 110, 113 (3d Cir. 2008) (concluding that neither the "sensitive" nature of the subject matter of a claim nor a vague assertion of "fear of retaliation" are a sufficient basis for excusing a prisoner's failure to exhaust). Furthermore, McCain has not directed this Court to any evidence, which would support his assertion that he could not file a grievance with the Facility Grievance Coordinator due to being "under 'imminent danger.'" Nor has he presented any evidence that administrative remedies were actually unavailable to him. *See Thompson v. Thomas*, No. 1:14-CV-1199, 2015 WL 5567975, at *3 (M.D. Pa. 2015) ("Courts have invariably held that affirmative misconduct by prison officials designed to impede or prevent an inmate's attempts to exhaust may render administrative remedies unavailable." (citing *Todd v. Benning*, 173 F. App'x 980, 982–83 (3d Cir. 2006))). Rather, it is undisputed, in this case, that the grievance form, which is to be submitted for initial review to the Facility Grievance Coordinator within 15 days of the alleged incident, was available at all housing units. And, finally, to the extent that McCain asserts, in conclusory fashion, that he exhausted available administrative remedies, he has not cited any record evidence in support thereof.

Thus, based on the foregoing, the undisputed record establishes that McCain's First Amendment retaliation claim against Roegner is administratively unexhausted. Since "it is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis," entry of partial summary judgment is appropriate in this case. *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F.Supp.2d 884, 894–95 (S.D.N.Y. 1998)).

## V. Recommendation.

Based on the foregoing, **IT IS RECOMMENDED** that the Defendant's motion (*doc. 259*) for partial summary judgment be **GRANTED**.[7]

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her

---

[7] For the benefit of the parties, a ruling regarding McCain's motion for summary judgment (*doc. 289*) will be rendered in due course.

discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **29th** day of **February, 2016**.

**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge

16